

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

December 12, 2007

BY HAND & ECF

Honorable John G. Koeltl
United States District Court
500 Pearl Street
New York, NY 10007

        Re:    United States v. Charlene Marant,
               07 Cr. 160 (JGK)

Dear Judge Koeltl:

      The Government respectfully submits this reply in further support of its motions in limine regarding the admission of certain evidence, the preclusion of other evidence regarding and the waiver of the attorney-client privilege.

    **I.**    **The Admission Of Certain Evidence In the Government's Case In Chief.**

      In its December 3, 2007 letter, the Government outlined the testimony of certain witnesses who will testify about their interactions with Charlene Marant.  The Government contends that, with the exception of two prior investors with Ms. Marant (designated Witness-8 and Witness-9), the evidence elicited from these witnesses is admissible as direct evidence of the mail fraud scheme charged in the Indictment.  All of the evidence, including the testimony of Witness-8 and Witness-9, is also admissible pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)").

      In her response dated December 10, 2007 ("Br."), the defendant urges this Court to preclude substantially all of this testimony. In explaining why the Court should do so, the defendant repeatedly misconstrues the nature and purpose of the requested testimony.

Honorable John G. Koeltl
December 12, 2007
Page 2

A.  Evidence That Marant Promised To Invest
    The Druckers' Money In Stocks And Bonds

Several witnesses - Witness-4 and Witness-5 - will testify to conversations involving Marant where it was represented that she had invested the Druckers' money in bonds, and not simply spent it on her own personal and business expenses. This is direct proof supporting one critical factual element of the fraud, and directly corroborates the Druckers' account of what Marant had promised. Thus, Marant's objection to this evidence - that she was authorized to use her discretion to invest the Druckers' money (Br. 2) - is simply non-responsive to the Government's claim that she orally promised them to invest their money in stocks and bonds and claimed to have done so.

Witness-4, a bank employee, was present when Marant accompanied the Druckers in her capacity as their financial adviser during a loan application interview. During that meeting, the bank employee was told that the Druckers' money was invested in bonds. This is direct corroboration of the Druckers' claim that Marant represented the money would be so invested.

Witness-5, a contractor working on the Druckers' home, had multiple conversations with Marant, again as the Druckers' financial adviser. In those conversations, she repeatedly provided explanations for why she (Marant) could not pay the bills that the contractor had submitted for the work on the Druckers' home. She claimed it was because the money was invested in bonds, and that early redemption of the bonds would incur penalties. The purpose of this testimony is not to dwell on Marant's refusal to pay the contractor, but on her <u>explanation</u> for that refusal. Her explanation was false (there were no bond investments) and the fact that she made this claim to the contractor directly corroborates the Druckers' claim that Marant represented she had invested their money in bonds, and not spent it on her own expenses.

B.  Evidence That Marant Did Not Invest The
    Druckers' Money In Stocks And Bonds

The Government will also bear the burden of proving that Marant did not invest the Druckers' money in stocks and bonds. This means, for example, that the Government will have to prove that the money was not simply lost through imprudent investments, but was misspent on Marant's own expenses.

Witness-3, a contractor who renovated Marant's Trump building office, will testify that he received a $90,000 payment

Honorable John G. Koeltl
December 12, 2007
Page 3

from Marant not as an investment, but as payment on an outstanding bill for construction done. The defendant incorrectly characterizes this as testimony about "a garden variety buseinss dispute." (Br. 3). In fact, the timing of her agreement to pay this money - after lengthy fights with Witness-3 over the bill and on the first day of trial to hear Witness-3's legal claim - as well as her payment of these funds shortly after receiving the Druckers' money, is direct evidence of the fraud. Witness-3's testimony will show that he was not taking the Druckers' money to invest it in stocks and bonds. The timing will also show that, almost simultaneously with the receipt of the Druckers' money, Marant was spending it on her own expenses. The fact that she fought the payment for years, and then sought the Druckers' money right at a time when she was facing the repercussions of Witness-3's civil suit against her, demonstrates Marant's true intent when she talked to the Druckers about "investing" their funds. Contrary to the defendant's contention, none of these facts can be demonstrated simply by reference to the bank records. Those records will only show a payment of monies to Witness-3. It will not show the purpose or background of those payments.

   As further evidence that Marant did not invest the Druckers' money in stocks and bonds, the Government will elicit the testimony of Witness-7 in connection with the civil suit between Marant and the Druckers. In that suit, Marant represented to Judge Holwell that the Druckers' money were held in a bank account. This was false. The bank account in fact belonged to a Georgia lawyer, Witness-7. Witness-7 will testify about how it was that Marant learned the account and routing number for his escrow account - namely, she had provided a $50 million bank draft to Witness-7 and asked him to hold it for a real estate investment. The bank did not honor the $50 million draft. During this time, Marant came in possession of Witness-7's bank account information.

   Marant's lie to Judge Holwell came to light when Judge Holwell froze Witness-7's bank account. Witness-7 contacted the Court, explaining that this was his escrow account and did not contain the Druckers' investments. Witness-7 later confronted Marant, and she asked him to help her by falsely confirming that the Druckers' funds were in his account.

   All of this testimony by Witness-7 is direct proof that Marant had not invested the Druckers' money anywhere. Instead, she pointed to a third party's bank account and falsely claimed that the Druckers' funds were there.

Honorable John G. Koeltl
December 12, 2007
Page 4

C.  Evidence That When Marant Repaid Money
    To The Druckers, It Did Not Come From
    The Liquidation Of Investments In Stocks
    <u>And Bonds</u>

On several occasions, Marant forwarded the Druckers monies that were purportedly liquidations of their investments. It is probative of the fraud that these monies did not come from the liquidation of any investments, but were instead monies taken from others that were designed for other purposes.

Witness-6 will testify about loans he made to Marant. In accepting those loans, Marant made representations about how she would repay the monies. In fact she failed to repay the loans. Marant argues that this testimony is duplicative of bank records. (Br. 3). This is not true. Bank records will only show that Marant received monies from Witness-6 and forwarded them to the Druckers. The records will not prove that Witness-6 had not been holding the Druckers' money in some kind of investment. Only evidence about the terms under which Marant received those funds (namely, as a loan, not a liquidation of an investment) can prove that.

Witness-7 will testify that he sent hundreds of thousands of dollars with Marant in order to acquire an investment in a rubber processing company. He never received the promised investment, and he lost his money. In fact, unbeknownst to Witness-7, a significant portion of his money was forwarded to the Druckers. The defendant argues that this is inadmissible because the fact of this investment is not relevant to the charged fraud, and no criminal charges have been filed. (<u>Id.</u>)

First, this testimony directly corroborates the Government's theory of the fraud as charged. Bank records will only show that Marant received monies from Witness-7 and forwarded them to the Druckers. Thus, the Government will seek to prove that Witness-7 had sent these funds to Marant not because he had liquidated some investment for the Druckers, but because Marant told him the monies would be invested. The fact that the monies were not so invested, but were instead used to repay the Druckers, is direct evidence that Marant did not have the promised independent investments for the Druckers. Second, the fact that no criminal charges have <u>yet</u> been filed is irrelevant to their admissibility. Even under Rule 404(b), other act evidence may include not just prior crimes, but also the admission of other "wrongs or acts ... for <u>any</u> purpose other than to show a defendant's criminal propensity." <u>United States</u> v. <u>Lasanta</u>, 978 F.2d 1300, 1307 (2d Cir. 1992) (emphasis in the

Honorable John G. Koeltl
December 12, 2007
Page 5

original).

     With respect to the proposed testimony of Witness-6 and Witness-7, the defendant also argues that money is fungible, and that the source of repaid funds is therefore irrelevant to the offenses charged. (Id.) The defendant is correct that money is fungible, but she reaches exactly the wrong conclusion about the admissibility of the fact that Witness-6 and Witness-7 were the source of funds given to the Druckers and were not themselves repaid on their investments. At trial, the Government will seek to prove more than what the bank records alone show. Those bank records will show that as she received the Druckers' money, Marant spent it on her own personal and business expenses. Because money is fungible, the Government will further seek to prove that there do not and did not exist other piles of investment monies that Marant had assigned for the Druckers' investments. If such investments existed, it would be more likely that she would have to resort to stealing money from Witness-6 and Witness-7 in order to repay the Druckers. The fact that Marant took monies from Witness-6 and Witness-7, used those monies to pay the Druckers rather than for the purposes she had promised, and then failed to repay Witness-6 and Witness-7, is direct evidence that Marant did not have these other reserves of money suggested by the "money is fungible" argument. It is direct evidence tending to prove that Marant was simply taking money from one party in order to pay another, and that there were no underlying investments.[*]

D.    The Other Act Evidence of Witness-8 and
       Witness-9 Should Be Admitted Pursuant to
       Rule 404(b)

     The Government also seeks to admit evidence that Marant had previously defrauded other investors - Witness-8 and Witness-9 - as other act evidence pursuant to Rule 404(b). The defendant's submission makes it clear that, among other things, she will claim that she believed that the Druckers' consented to have her use their funds on a range of personal and business expenses. (Br. 1). The testimony of Witness-8 and Witness-9 is probative of Marant's intent.

---

[*] It is also admissible pursuant to Rule 404(b). Just as Marant used the Druckers' money to pay an unrelated contracting claim to Witness-3, Marant took Witness-6 and Witness-7's funds to repay the Druckers. Neither Witness-6 nor Witness-7 knew anything about the Druckers at the time, and neither understood that this was how she would be using their money.

Honorable John G. Koeltl
December 12, 2007
Page 6

In her response, Marant argues that the Court should exclude this testimony because it involves a commercial, not a criminal dispute, and the acts are too remote in time. (Br. 4) Marant also argues that these earlier frauds are too dissimilar to be probative of the charged fraud. (Br. 4-5)

First, it is irrelevant that the acts were the subject of commercial arbitration, and not criminal charges. As mentioned, rule 404(b) permits testimony about non-criminal acts that are probative of intent. United States v. Lasanta, 978 F.2d at 1307. Furthermore, it is an unfortunate fact that many crimes go uncharged. That does not mean that the activity at issue is not criminal. Indeed, it appears that, in addition to the current charges, Marant has engaged in a large number of questionable transactions that may be criminal in nature. Secondly, the acts are not remote in time. Marant defrauded Witness-8 and Witness-9 between 1993 and 1995. She began her relationship with the Druckers only a few years later, and began defrauding them in about 1999. A four-year break does not make the prior acts with respect to Witness-8 and Witness-9 remote in time. In fact, the cases cited by the defendant all involve substantially longer period of times of over 10 years. (Br. at 4 (cases cited)).

Finally, the frauds against Witness-8 and Witness-9 are not too dissimilar to undermine their probative value. In fact, certain key features exist. As with the Druckers, Marant established unusually close personal relationships with Witness-8 and Witness-9. She then used these relationships to obtain funds from Witness-8 and Witness-9, and invest those funds in ways inconsistent with her promises to them. Just as she told the Druckers that their money would be invested in stocks and bonds, she told Witness-8 and Witness-9 that the investments were guaranteed, when in fact they were very risky. With both the Druckers and these earlier investors, Marant also took it upon herself to spend their money without first obtaining the consent of her clients. With the Druckers, she spent their money to fund her own business. With Witness-8 and Witness-9, Marant invested in risky stocks that would earn her (Marant) high sales commissions. Further, it appears, that Marant similarly explained her activities by falsely claiming that Witness-8 and Witness-9 had consented to all of the trades.

Given her history with Witness-8 and Witness-9, Marant's claim now that she believes that Druckers had consented to her activities is implausible.

Honorable John G. Koeltl
December 12, 2007
Page 7

## II. The 2005 Incident

In a sealed filing, the Government also sought to preclude the defendant from eliciting testimony regarding an incident in 2005, pursuant to Rule 403.[*]

In her response, the defendant argues that she must elicit evidence of this incident because it provides motive ("either affection or embarrassment") for the victims' consenting to Marant's use of their money. (Br. 7-8) Marant then generally refers to "multiple similar incidents" that she will elicit, without providing any details. (Id.)

The Government submits that, based on the evidence proffered, Marant cannot show the relevance of this testimony. With respect to the motive of affection, there will be abundant evidence of a very close personal relationship between the victims and Marant. Indeed, the Government will seek to prove that she established a very close personal relationship with them, and abused that relationship. The facts of the 2005 incident are not in anyway necessary to establish that fact, which will apparently be undisputed.

With respect to the claim of embarrassment, the 2005 incident occurred approximately 6 years after the fraud began. It is simply impossible that this incident gave the victims a reasons to consent to Marant's use of their money because the incident post-dated much of the fraud.

Examination on this topic would needlessly embarrass the participants in the incident. It would also likely confuse the jurors about the relevant facts in the case - such as what promises Charlene Marant made to the victims about the use of their money - by dwelling on a story about inappropriate behavior.

To the extent the defendant has indicated that their will be testimony about similar incidents, but has failed to provide any details, the Government further seeks to preclude such testimony. The relevance of such evidence to the charged fraud has not been demonstrated, and for the reasons stated such testimony would be prejudicial.

---

[*] The details of this incident are set forth in the Government's sealed letter dated December 3, 2007.

Honorable John G. Koeltl
December 12, 2007
Page 8

### III. The Attorney-Client Privilege Waiver

According to the defendant's December 10, 2007 letter, she will not assert that the Government is prohibited from using at trial any of the documents subpoenaed from her office based on the existence of a work product or attorney-client privilege. (Br. 8)  Accordingly, this issue is moot.

### IV. Conclusion

For all of the foregoing reasons, the Government respectfully submits that the background evidence discussed int the Government's December 3, 2007 letter relating to Witnesses 1 through 7 should be admissible at trial as direct evidence of the crimes charged and, in the alternative, pursuant to Rule 404(b). The Government also respectfully submits that the "other acts" evidence discussed above relating to Witness-8 and Witness-9 should be admissible at trial as other act evidence pursuant to Rule 404(b).  Finally, the Government submits that the defendant should be precluded from eliciting testimony about the 2005 incident, or similar incidents, pursuant to Rule 403.

>Respectfully submitted,
>
>MICHAEL J. GARCIA
>United States Attorney
>
>By:   /s/ William J. Harrington
>      WILLIAM J. HARRINGTON
>      Assistant United States Attorney
>      (212) 637-2331

cc: Philip Weinstein, Esq.
    (By ECF & Hand)